SWANSON, J.,
dissenting.
I respectfully dissent. Appellant brought this medical malpractice action alleging that appellees’ negligence resulted in the death of appellant’s daughter three days, after she gave birth to a stillborn child. Appellant complied with the statutory presuit requirements by obtaining written corroboration from a qualified medical expert, Dr. Margaret Thompson. Because Dr. Thompson’s affidavit clearly established her qualifications, that should have been the end of the matter. Instead, appellees filed a motion to dismiss appellant’s complaint and used court-ordered limited discovery to go on a fishing expedition in an attempt to impeach Dr. Thompson’s qualifications. After appellant’s counsel refused to cooperate in this endeavor, the trial court dismissed appellant’s wrongful death action, depriving appellant of her constitutionally guaranteed access to the courts. .
Before filing a medical negligence action, a claimant is required to conduct a presuit investigation to determine- that “there are reasonable grounds to believe that ... [a]ny named. defendant in- the litigation was negligent- in the care or treatment of the- claimant” and “[s]uch negligence resulted in injury to the claimant.” § 766.203(2), Fla.-Stat. (2011). Corroboration of those findings by a medical expert must be obtained in writing. Id. A medical expert is defined as “a person duly and, regularly engaged in the practice of his or her profession who holds a health care professional degree from a university or college and who. meet§ the requirements of an expert witness as set- forth in s. 766.102.” § 766.202(6), Fla. Stat. (2011). Specifically, section 766.102, Florida Statutes (2011), provides:
(5) A person may not give expert testimony concerning the prevailing professional standard of care unless the person *352 is a health care provider who holds an active and valid license and conducts a complete review of the pertinent medical records and meets the following criteria:
(a) If the health care provider against whom or on whose behalf the testimony is offered is a specialist, the expert witness must:
1. Specialize in the same specialty as the health care provider against whom or on whose behalf the testimony is offered; or specialize in a similar specialty that includes the evaluation, diagnosis, or treatment of the medical condition that is the subject of the claim and have prior experience treating similar patients; and
2. Have devoted professional time during the 3 years immediately preceding the date of the occurrence that is the basis for the action to:
a. The active clinical practice of, or consulting with respect to, the same or similar specialty that includes the evaluation, diagnosis, or treatment of the medical condition that is the subject of the claim and have prior experience treating similar patients;
b. Instruction of students in an accredited health professional school or accredited residency or clinical research program in the same or similar specialty; or
c. A clinical research program that is affiliated with an accredited health professional school or accredited residency or clinical research program in the same or similar specialty.
Corroboration from a qualified medical expert serves to prevent the filing of baseless medical malpractice litigation. Shands Teaching Hosp. & Clinics, Inc., v. Barber, 638 So.2d 570, 572 (Fla. 1st DCA 1994). As noted by our supreme court, this statutory scheme “must be interpreted liberally so as not to unduly restrict a Florida citizen’s constitutionally guaranteéd access to the courts, while at the same time carrying out the legislative policy of screening out frivolous lawsuits and defenses.” Kukral v. Mekras, 679 So.2d 278, 284 (Fla.1996).
Dr. Thompson’s affidavit on its face clearly established that she met all of the statutory requirements. Specifically, her affidavit and curriculum vitae detailed her education, experience, and professional awards and plainly demonstrated that she was a board-certified obstetrician/gynecologist (OB/GYN) for thirty years and had been engaged in full-time patient care pri- or to her retirement in March 2008, nine months before the decedent’s death. Moreover, they demonstrated that she had served in several roles requiring her to supervise OB/GYN nurses and other medical staff at a hospital and to be familiar with the relevant standards of care. Despite this, the trial court allowed appellees to depose Dr. Thompson regarding her qualifications. During her deposition, Dr. Thompson stated that she worked more than fifty hours per week as an OB/GYN in 2006 through March 2008 and explained how she managed to attend both graduate and law school during the same period. Although the trial court questioned the “feasibility” of Dr. Thompson’s statement that she was engaged in full-time patient care while pursuing her master’s and law degrees, the trial court was not permitted to make credibility determinations concerning an otherwise unrebutted and facially sufficient affidavit. On a motion to dismiss challenging a plaintiffs compliance with the statutory presuit requirements in a medical malpractice action, this court applies the de novo standard of review and must consider all factual allegations in a light most favorable to the plaintiff. Oliveros v. Adventist Health Sys./Sunbelt, Inc., 45 So.3d 873, 876-77 (Fla. 2d DCA 2010); Holden v. Bober, 39 So.3d 396, 400 *353 (Fla. 2d DCA 2010). Because the trial court did not apply the correct principles in determining that Dr. Thompson was not a qualified medical expert, I would reverse the trial court’s order dismissing appellant’s wrongful death action. See Apostlico v. Orlando Reg’l Health Care Sys., Inc., 871 So.2d 283 (Fla. 5th DCA 2004).
To the extent the trial court found that appellant committed a violation of its order allowing limited discovery regarding Dr. Thompson’s qualifications, it is questionable that appellees had a. right to engage in such discovery, particularly . where Dr. Thompson’s qualifications were clearly established on the face of the affidavit. See Plantz v. John, 170 So.3d 822, 824 (Fla. 2d DCA 2015). Even if such discovery was available, appellant’s counsel was justified in objecting to appellees’ misuse of the discovery process to go on a fishing expedition that exceeded what was relevant to determine Dr. Thompson’s qualifications as a corroborating presuit expert witness. Thus, the record fails to show, and the trial court’s dismissal order fails to include the necessary findings under Kozel v. Ostendorf, 629 So.2d 817, 818 (Fla.1993), that there was a violation of the trial court’s discovery order warranting the extreme sanction of dismissal. Because the trial court misapplied the statutory presuit requirements so -as to deprive appellant of her constitutional right of access to the courts, I would reverse and remand with directions that the trial court reinstate 'appellant’s wrongful death action.